# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEANNA MICHELLE MORY,<br><br>　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>CITY OF CHULA VISTA ET AL.,<br><br>　　　　　　　　　　Defendants. | CASE NO. 07CV0462<br><br>**ORDER: (1) DISMISSING PLAINTIFF'S FIRST, FOURTH, FIFTH, SEVENTH, AND EIGHTH CAUSES OF ACTION WITHOUT PREJUDICE; (2) STRIKING AND DISMISSING PLAINTIFF'S THIRD AND SIXTH CAUSES OF ACTION WITH PREJUDICE; (3) ADOPTING MAGISTRATE JUDGE MAJOR'S R&R**; **AND (4) DENYING PLAINTIFF'S APPLICATION FOR A CONTINUANCE UNDER RULE 56(f)** |

　　　Presently before the Court are Defendants' Motion to Dismiss the First, Third, Fourth, Fifth, Sixth, Seventh, and Eighth Causes of Action in Plaintiff's First Amended Complaint [Doc. No. 30], Plaintiff's Opposition [Doc. No. 43], Defendants' Reply [Doc. No. 52]; Defendants' Special Motion to Strike Plaintiff's First, Third, and Sixth Causes of Action From the First Amended Complaint ("Defs.' Anti-SLAPP Motion") [Doc. No. 33], Plaintiff's Opposition [Doc. No. 44], Defendants' Reply [Doc. No. 53]; Magistrate Judge Major's Report and Recommendation ("R&R") Granting and Denying in part Defendants' Motion to Enforce Their Settlement Agreement with Plaintiff [Doc. No. 77]; and Plaintiff's Application for a Continuance under Rule 56(f) [Doc. No. 85] and Defendants'

1  Response [Doc. No. 93.]

2  For the following reasons, this Court: (1) **DISMISSES** Plaintiff's first, fourth, fifth, seventh,
3  and eighth causes of action without prejudice; (2) **STRIKES** and **DISMISSES** Plaintiff's third and
4  sixth causes of action with prejudice; (3) **ADOPTS** Magistrate Judge Major's R&R; and (4) **DENIES**
5  Plaintiff's application for a continuance under Rule 56(f).

**BACKGROUND**

8  On July 19, 2006, Plaintiff Deanna Mory ("Mory") and the Chula Vista Police Officers
9  Association ("CVPOA") filed a lawsuit ("Mory I") against the Chula Vista Police Department
10  ("CVPD"), City of Chula Vista, Captain Donald Hunter, and Chief Richard Emerson. [See Mory I
11  Complaint.] The lawsuit arose because the CVPD temporarily denied Mory permission to
12  participate in beauty pageants while she was in training as a probationary employee. [Id.] Mory
13  helped make this first lawsuit a matter of public interest by granting interviews to local and
14  national news agencies and holding press conferences. [Defs.' Anti-SLAPP Motion at 5-6.]

15  Nine of the named Defendants in this action ("Mory II") are members of the CVPOA.
16  [Defs.' Anti-SLAPP Motion at 4-5.] These Defendants ("Union Defendants") believe that Mory's
17  first lawsuit (Mory I) has no merit or any legitimate objective. [Id.] During a CVPOA meeting in
18  January 2007, these Defendants expressed their opposition to the CVPOA Board of Director's
19  decision to continuously use their membership dues to help Mory pursue that lawsuit (Mory I).
20  [Id. at 7.] The Union Defendants have stated that they expressed their opposition on their own
21  volition and in the exercise of their constitutional rights to freedom of speech and expression. [Id.]
22  However, Plaintiff argues that Chula Vista Police Chief Emerson and Captain Donald Hunter used
23  their higher rank to pressure the Union Defendants to oppose the prosecution of the Mory I lawsuit
24  at the meeting. [Plaintiff's First Amended Complaint ("FAC") ¶¶ 45-49.]

25  Plaintiff alleges that at the January 2007 union meeting the Union Defendants: (1) insisted
26  that the CVPOA Board of Directors drop the Mory I lawsuit; (2) called for a membership vote on
27  whether to proceed supporting the lawsuit; (3) asked about a $100,000 retainer for legal services in
28  connection with the lawsuit; (4) indicated the Mory I lawsuit would bankrupt the CVPOA; (4)

1  referred to Mory as a "$1.98 "employee because she had "nothing vested in [the CVPOA] and it
2  made no sense to spend this kind of money to defend her rights." [Id. at 7-8.]
3      In response to Defendants' foregoing acts and statements at the union meeting, Plaintiff
4  Mory and the CVPOA filed the instant lawsuit on March 13, 2007. [Id. at 8.] On April 30, 2007,
5  Defendants responded to the original complaint by filing a motion to dismiss under 12(b)(6), as
6  well as a special motion to strike portions of the complaint and to request attorneys' fees under
7  California's Anti-SLAPP statute. [Id.] Soon after, the CVPOA dropped out of the lawsuit, leaving
8  Mory as the only plaintiff. On June 14, 2007, Plaintiff Mory filed an amended complaint. [Id.;
9  FAC.]
10      In the FAC, Plaintiff Mory alleges that after the meeting, the Union Defendants displayed
11  tee-shirts at the workplace marked with the phrase "I Support the Outta Line Nine." [Id. at 9-10.]
12  The phrase referred to the nine Union Defendants that raised objections at the meeting and who are
13  also named defendants in the instant lawsuit (Mory II). [Id.] Plaintiff argues that the creation and
14  display of these tee-shirts were part of the Defendants' conspiracy to intimidate the CVPOA Board
15  to drop the Mory I lawsuit. [See FAC ¶¶ 37-41].[1]
16      As a result of the Defendants' alleged actions, Plaintiff has sought injunctive relief and
17  damages: (1) for "unlawful interference with protected rights;" (2) for violations of the Fair Labor
18  Standards Act; (3) California Labor Code § 1102.5; (4) 42 U.S.C. § 1985(2) (unlawful
19  intimidation of parties); (5) 42 U.S.C. § 1983 (conspiracy to violate civil rights); (6) California
20  Government Code § 12940(h) (retaliation); (7) 42 U.S.C. § 2000e-3 (retaliation); and (8) 42
21  U.S.C. § 1986 (neglect to prevent conspiracy). [See FAC.] Defendants now move to dismiss
22  seven of Plaintiff's eight amended claims on various grounds and also move to strike three of the
23  claims under California's Anti-SLAPP statute.

---

28  [1] Plaintiff also states City Manager Jim Thomson's failure to insist on the removal of the tee-shirts fostered a hostile work environment. [Pl.'s Opp. at 24.]

- 3 -                                                                                              [07cv0462]

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) provides the vehicle by which a defendant may attack a complaint that fails to allege facts sufficient to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In a Rule 12(b)(6) motion to dismiss, a plaintiff's allegations of material fact are accepted as true and are construed in the light most favorable to plaintiff. Barron v. Reich, 13 F.3d 1370, 1374 (9th Cir. 1994). However, the court need not accept as true allegations that contradict facts which may be judicially noticed by the court. Mullis v. United States Bank. Ct., 828 F.2d 1385 (9th Cir. 1987).

"Dismissal [for failure to state a claim] can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Although the allegations of a complaint must be taken as true for purposes of a decision on the pleadings, dismissal is proper if the complaint is vague, conclusory, and fails to set forth any material facts in support of the allegations. North Star Int'l v. Arizona Corp. Comm'n, 720 F.2d 578, 583 (9th Cir. 1983). Finally, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . ." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (internal citations and quotations omitted).

**ANALYSIS**

**I.  Defendants' Motion to Dismiss Seven of Plaintiff's Eight Claims Is Granted**

   **A.  Defendants' Alleged Conduct Constitutes Protected Free Speech**

In assessing the seven claims, this Court recognizes that the Union Defendants were exercising their right to free speech when they objected to the CVPOA Board's use of their union dues towards the prosecution of Mory I. Defendants highlight that Congress has specifically intended to protect speech at union meetings. The federal Labor Management Reporting and Disclosure Act ("LMRDA") states:

> Freedom of speech and assembly. Every member of any labor
> organization shall have the right to meet and assemble freely with

>       other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings[.]

29 U.S.C. § 411(a)(2) (emphasis added); see also Salzhandler v. Caputo, 316 F.2d 445, 450-51 (2d Cir. 1963) (stating that the enactment of the LMRDA was motivated by an interest in permitting union members to question the manner in which the union's officials handle the union's funds); Scovile v. Watson, 338 F.2d 678, 680 (7th Cir. 1964) (stating freedom of speech is a union member's right protected by the LMRDA); Berning v. Local 2209 UAW, 2007 U.S. Dist. LEXIS 80168, *35 (D. Ind. 2007) (stating same). Plaintiff correctly argues that this statute only applies to private employee union members and not public employees. However, this Court finds that the Union Defendants' statements in this case still warrant protection under the First Amendment.

The First Amendment protects the rights of public employees to form unions. Smith v. Arkansas State Highway Employees, Local 1315, 441 U.S. 463 (1979); Boals v. Gray, 775 F.2d 686, 692 (6th Cir. 1985); see also Cal. Govt. Code § 3500 et. seq. (protecting public employees' rights to participate in unions). In Abood v. Detroit Bd. Of Education, 431 U.S. 209, 233-235 (1977), the Supreme Court held that a public teacher had a First Amendment Right to not be required, as a condition of employment, to contribute union dues towards the advancement of ideological causes with which the teacher disagreed and which were not "germane" to the union's duties as a collective-bargaining representative. The Court explained that "the freedom of an individual to associate for the purposes of advancing beliefs and ideas is protected" by the First Amendment and that "a government may not require an individual to relinquish rights guaranteed to him by the First Amendment as a condition of public employment." Id.

Similarly, here, the Union Defendants did not "relinquish" their free speech rights by becoming public employees. They did not relinquish their rights to speak and debate about: (1) the merits of the Mory I lawsuit–an issue of public concern–and (2) the use of their union dues towards

that lawsuit.[2]

Moreover, this Court also recognizes that "opposition" does not lose its protected status simply because it angers and upsets the listeners. After all that is the very point of opposition, as Justice Douglas wrote in Terminiello v. City of Chicago, 337 U.S. 1, 4 (1949):

> Accordingly a function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger. Speech is often provocative and challenging. It may strike at prejudices and preconceptions and have profound unsettling effects as it presses for acceptance of an idea. That is why freedom of speech, though not absolute, [citation] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.

Thus, the Union Defendants' statements constitute protected speech.[3]

### B. Defendants' Motion for a More Definitive Statement as to Plaintiff's First Cause of Action is Granted

A Rule 12(e) motion is proper where the complaint is not specific enough to apprise the defendant of the substance of the claim being asserted. Bureerong v. Uvawas, 922 F.Supp 1450, 1461 (C.D. Cal. 1996). Specifically, "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Id.

Here, Plaintiff fails to allege what statutory or other legal authority prohibits the alleged conduct contained in the first cause of action. Plaintiff alleges that "[a] government employer is prohibited from interfering with, restraining, or denying the exercise of (or attempts to exercise)

---

[2] The Court notes that the Mory I lawsuit involved discrimination claims and that such claims are issues of public concern. Connick v. Myers, 461 U.S. 138, 146, (1983); Riedinger v. D'Amicantino, 974 F. Supp. 322, 329 (S.D.N.Y. 1997). See also section (II)(B)(2) of this order discussing how the Mory I lawsuit is an issue of public interest.

[3] The Court also finds that the "I Support the Outta Line Nine" tee-shirts, expressing support for the Union Defendants in this case, constitute protected speech. Cohen v. California, 403 U.S. 15, 26 (1971) (applying ordinary First Amendment principles to tee-shirt slogan reading "Fuck the draft"); Ayres v. City of Chicago, 125 F.3d 1010, 1017 (7th Cir. 1997) (finding "message-bearing" tee-shirts are "vehicles of . . . ideas and opinions" and can constitute protected speech).

1  any rights provided pursuant to the Constitution or laws of the United States." However, Plaintiff
2  does not cite to any statute or specific legal authority. In the opposition, Plaintiff asserts that this
3  first claim is based on Section 1983. [Pl.'s Opp. at 4-6.] However, that statute is not referenced
4  anywhere under that first claim and the fifth claim already specifies it is based on Section 1983
5  violations. Therefore, the Court **GRANTS** Defendants' motion for a more definitive statement
6  and **DISMISSES** Plaintiff's first claim for relief without prejudice.

        **C.**       **Plaintiff's Third Cause of Action Fails to State a Claim Because Plaintiff Failed to Timely Present a Tort Claim**

        The California Tort Claims Act provides that presentation of a claim for money or damages against a local public entity, and action thereon by the entity, are prerequisites to filing a civil lawsuit for damages. Cal. Gov. Code § 945.4. The Act provides in part that:

> [N]o suit for money or damages may be brought against a public entity[4] on a cause of action for which a claim is required to be presented . . . until a written claim therefore has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board . . . [.]

According to the Ninth Circuit, "one of the primary functions" of the claims presentation requirement is to put the public entity on notice of a potential claim for damages, "thereby providing . . . an opportunity to settle meritorious claims without litigation." <u>Haywood v. Pasadena</u>, 1991 U.S. App. LEXIS 11984 at *6 (9th Cir. 1991). The California Supreme Court has held that a plaintiff fails to state a cause of action when he or she fails to allege facts demonstrating or excusing compliance with the claim presentation requirement. <u>State of California v. Superior Court</u>, 32 Cal.4th 1234, 1239 (2004).

        In the present action, Plaintiff has raised a claim for damages against Defendants for violating California Labor Code § 1102.5. [FAC ¶ 68 ("Plaintiff is entitled to an award of punitive and exemplary damages"). However, Plaintiff has failed to allege that she timely presented a tort claim to the City of Chula Vista with respect to the conduct alleged under the

---

[4] This presentment requirement also applies to suits against public employees. Cal. Gov't Code §§ 911.2 (a), 950.2; <u>Longorio v. Jacot</u>, U.S. Dist. LEXIS 92125, *12-13 (E.D. Cal. 2006).

claim. Therefore, the Court **DISMISSES** Plaintiff's third claim for relief **with prejudice**.[5]

### D. Plaintiff Failed to State a Claim for Her Fourth and Eighth Causes of Action under 42 U.S.C. § 1985(2) and 42 U.S.C. § 1986

#### 1. Plaintiff's Section 1985 and 1986 Claims Are Conclusory and Fail to Set Forth Any Material Facts in Support of the Allegations

Plaintiffs can seek relief under 42 U.S.C. § 1985(2) when defendants conspire to violate their constitutional right to equal protection under the law. Atamian v. Simpson, 2007 U.S. Dist. LEXIS 39560, *13 (E.D. Cal. 2007). The Section only reaches conspiracies that are motivated by racial or class-based discriminatory animus. Id. (citing Griffin v. Breckenridge, 403 U.S. 88, 101-02 (1971)); Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 267-68 (1993). A plaintiff asserting a claim under Section 1985(2) must allege: (1) a conspiracy, (2) motivated by racial or class-based animus, and (3) with the intent to deny equal protection or to injure for lawfully seeking equal protection. Id. at *14. In the instant lawsuit (Mory II), Plaintiff argues that Defendants–motivated by a class-based animus towards women–conspired to prevent Plaintiff from pursuing her first lawsuit (Mory I) that "sought to make women equal to men with respect to [the] application of the policies of the City of Chula Vista." [Pl.'s Opp. at 7-9.]

However, put simply, the evidence demonstrates: (1) that the Union Defendants voiced objections at a union meeting about the use of their membership dues; (2) Plaintiff sued them as a result of these objections; and (3) the Union Defendants then expressed support for each other by creating the tee-shirts at issue. Even if Defendants' actions and statements do not warrant first amendment protection, Plaintiff's allegations still present no basis for concluding that any of Defendants' actions were motivated by a racial or class-based discriminatory animus. For example, in the opposition, Plaintiff attempts to argue there *was* a gender based animus by stating:

---

[5] As discussed later in this order, the Court also dismisses Plaintiff's third cause of action and strikes Plaintiff's third and sixth causes of action under California's Anti-SLAPP statute. Courts find it inappropriate to grant plaintiffs leave to amend state law claims that are stricken under that statute. Flores v. Emerich & Fike, 2006 U.S. Dist. LEXIS 63251, *22-31 (E.D. Cal. 2006) ("To allow amendment after an anti-SLAPP motion to strike has been granted eviscerates the purpose of the anti-SLAPP statute."); Thomas v. L.A. Times Communs. LLC, 189 F. Supp. 2d 1005, 1017 n.11 (C.D. Cal. 2002); Simmons v. Allstate Ins. Co., 92 Cal. App. 4th 1068, 1073-74 (2001). Therefore, Plaintiff's third and sixth claims are dismissed **with prejudice**.

- 8 -                                                          [07cv0462]

> Since Defendants could not possibly be in a position to evaluate the strengths of the merits of Plaintiff's gender discrimination lawsuit (and therefore were not in a position to reasonably determine whether the CVPOA was in fact "wasting its money"), they <u>must have been</u> motivated by an animus toward the claims in Plaintiff's first lawsuit: *i.e.* a class-based animus based on her gender.

[Pl.'s Opp. at 8 (emphasis added).] This is but one of the various conclusory arguments that form the basis of this suit and Mory I. Also, the allegations of pressure and intimidation by Chief Emerson and Captain Hunter are completely unsupported by the evidence before the Court. [<u>See</u> Defs.' Reply at 4-7.] Thus, because the allegations are conclusory and there are no material facts in support of Plaintiff's charge of a racial or class based animus, the Court **DISMISSES** Plaintiff's fourth cause of action under Section 1985 without prejudice.[6]

### 2. Plaintiff's Section 1985 and 1986 Claims are Barred by the Intracorporate Conspiracy Doctrine

Assuming, <u>arguendo</u>, that Plaintiff had sufficiently plead each of the elements of a <u>prima facie</u> case for a violation of Section 1985 or 1986, Plaintiff would still be precluded from maintaining her fourth and eighth causes of action by virtue of the "intracorporate conspiracy doctrine." <u>Hoefer v. Flour Daniel, Inc.</u>, 92 F.Supp. 2d 1055, 1057 (C.D. Cal. 2000) (holding that the intracorporate conspiracy doctrine applies to 42 U.S.C. § 1985 conspiracy claims).

The intracorporate conspiracy doctrine provides that, as a matter of law, an entity cannot conspire with its own employees or agents. A conspiracy requires a meeting of minds. <u>See</u> <u>Fonda v. Gray</u>, 707 F.2d 435, 438 (9th Cir. 1983). "It is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy. A corporation cannot conspire with itself anymore than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation." <u>Nelson Radio & Supply Co. v. Motorola, Inc.</u>, 200 F.2d 911, 914 (5th Cir. 1952), <u>cert</u> <u>denied</u>, 345 U.S. 925 (1953).

---

[6] The Court also **DISMISSES** Plaintiff's eighth claim for relief without prejudice under 42 U.S.C. § 1986 for neglect to prevent conspiracy. "A claim can be stated under section 1986 only if the complaint contains a valid claim under section 1985." <u>Karim-Panahi v. Los Angeles Police Dept.</u>, 839 F.2d 621, 626 (9th Cir. 1988).

Based on this reasoning, federal courts have held that the intracorporate conspiracy doctrine bars a Section 1985(2) claim where the conspiratorial conduct challenged is essentially a single act by a single government body acting exclusively through its own officers, each acting within the scope of his or her official capacity. Schmitz v. Mars, Inc., 261 F. Supp. 2d 1226 (D. Or. 2003) (applying the doctrine to §1985(2) claims); Hoefer v. Fluor Daniel, Inc., 92 F. Supp. 2d 1055, 1058 (C.D. Cal. 2000) (same); see also Woldeab v. 7-Eleven, Inc., 2006 U.S. Dist. LEXIS 82191, *9 (S.D. Cal. 2006) (concluding that the "modern and majority rule" is that the doctrine does bar a Section 1985 claim). Thus, Plaintiff's Section 1985 claim is barred under the doctrine. Accordingly, Plaintiff's Section 1986 claim is also barred. Karim-Panahi, 839 F.2d at 626.

**E.    Plaintiff Has Failed to State a Claim for the Fifth Cause of Action, 42 U.S.C. § 1983, Conspiracy to Violate Civil Rights**

The elements of a Section 1983 cause of action include: (1) a deprivation of a constitutionally-protected right (e.g., free speech and association), and (2) that the constitutional deprivation was caused by "state action." Collins v. Womancare, 878 F.2d 1145, 1147 (1989). "To state a claim for a conspiracy to violate one's constitutional rights under Section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy." Burns v. County of King, 883 F.2d 819, 821 (9th Cir. 1989). This heightened pleading standard is met if the plaintiff alleges "which defendants conspired, how they conspired and how the conspiracy led to a deprivation of his constitutional rights . . ." Harris v. Roderick, 126 F.3d 1189, 1196 (9th Cir. 1997).

Plaintiff's Section 1983 claims are based on the same conduct as their legally defective Section 1985 and Section 1986 claims. The FAC alleges that lieutenants and Captain Hunter conspired to use their positions of authority to intimidate and harass Plaintiff and the CVPOA Board members into dropping Plaintiff's lawsuit. [FAC ¶¶ 23-39.] As a result, Plaintiff alleges that those acts "subjected Mory and CVPOA to a deprivation of their rights to redress their grievances through the civil litigation process in the federal district court of the United States." [FAC ¶ 79.] These allegations fail on several grounds.

First, Plaintiff was not deprived of her right to redress her grievance since she is currently pursuing the claim before this Court. Second, Plaintiff has not stated that she was personally intimidated by the Union Defendants' statements. [See Mory Decl.] Third, the CVPOA is no longer a plaintiff in this action. In the opposition brief, Plaintiff contends that Defendants' "intimidation" led the CVPOA to drop out of the lawsuit, which hindered the prosecution of her claim. [Pl.'s Opp. at 12-13.] However, the former co-plaintiff CVPOA members stated that they withdrew on their own volition and not due to an alleged intimidation conspiracy. [Defs.' Anti-SLAPP Motion at 3 (citing declarations).] Thus, as with Plaintiff's other civil rights claims, the Court finds there are no material facts supporting these allegations.[7]

### F. Plaintiff's Sixth And Seventh Claims for Retaliation under California and Federal Law Are Dismissed Because Defendants' Alleged Actions Were Not "Adverse"

The California Fair Employment & Housing Act ("FEHA") and Title VII of the federal Civil Rights Act contain substantially similar provisions making it an unlawful employment practice for an employer to discriminate against any person for: (1) opposing any practice forbidden or made unlawful under those statutes, or (2) filing a complaint, making a charge, or participating in any proceeding, hearing, or litigation under those laws. See 42 U.S.C. § 2000e-3(a) (Title VII); Cal. Gov. Code § 12940(h) (FEHA). The California Supreme Court has held that to succeed on a theory of unlawful retaliation under FEHA, an employee must demonstrate that he or she has been subjected to an adverse employment action that materially affects the terms, conditions, or privileges of employment. Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1051 (2005).

---

[7] A municipality cannot be held vicariously liable under § 1983 for the acts of its employees or agents. Monell v. Dept. of Soc. Servs., 436 U.S. 658, 694 (1978). Rather, municipal liability only attaches where action taken pursuant to official municipal policy causes a constitutional violation. Id. at 691 n. 55, 690. "If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point." City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986). The Court has already found that Plaintiff has failed to present any material facts indicating that her constitutional rights were violated. Therefore, the Section 1983 claim against the City of Chula Vista is **DISMISSED**.

1    The United States Supreme Court has held that Title VII prohibits a broader range of conduct that need not be "workplace-related or employment-related." Burlington Northern & Santa Fe Railway Co. v. White, 126 S. Ct. 2405, 2414 (2006). However, the White Court held that the conduct must be "materially adverse to a reasonable employee," in that it is harmful enough that "it could well dissuade a reasonable worker from making or supporting a charge of discrimination." Id. at 2409. The White Court explained that material adversity should be analyzed from the viewpoint of a reasonable employee, thus employing an objective standard; yet, the Court also made clear that context matters. Id. at 2414-15.

Finally, the White Court also separated "significant from trivial harms." It stated that Title VII's anti-retaliation provision "protects an individual not from all retaliation, but from retaliation that produces an injury or harm," and explained that trivial harms could not be actionable since they will not normally be a deterrent to bringing employment claims. Id. at 2414 ("[N]ormally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence."). In this action, Plaintiff argues that Defendants' retaliatory acts include: (1) the objections at the January 2007 union meeting regarding the use of union funds towards the prosecution of Mory I; (2) the display of the tee-shirts; and (3) Captain Hunter and Chief Emerson's failure to require the officers to take the tee-shirts down. [Pl.'s Opp. at 17-24.] As mentioned, the union meeting statements and the tee-shirts constitute protected speech and therefore do not amount to actionable conduct. Second, the Court finds that even if these actions do not constitute protected speech, they are trivial harms, unrelated to the terms, conditions, or privileges of employment, and thereby non-actionable under both FEHA and Title VII.

Plaintiff has not mentioned, nor is this Court aware of any cases that suggest that this type of conduct constitutes an "adverse" action under FEHA or Title VII. Courts have held actionable: a refusal to hire, delay in reinstatement, demotion, refusal to promote, discharge, unfavorable references, and harassment in the form of interrogations and surveillance of the employee. 1-34 Matthew Bender, Employment Discrimination § 34.04 [4] (2007). They have also held that mere inconveniences to an employee will not rise to a level of actionable retaliation. Id. Thus, after reviewing White, and post-White case law, this Court finds that the

union statements and the conduct surrounding the tee-shirts is–if not protected speech–a mere annoyance and inconvenience that falls well short of the level of actionable conduct under FEHA and Title VII.  Therefore, Plaintiff's sixth cause of action is dismissed with prejudice and Plaintiff's seventh cause of action is dismissed without prejudice.

**II.     Defendants' Special Motion to Strike Under California's Anti-SLAPP Statute is Granted As to Plaintiff's Third and Sixth Causes of Action**

**A.     Legal Standard**

Section 425.16 of the California Code of Civil Procedure was enacted in order to provide for the early dismissal of meritless suits aimed at chilling the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.  See Cal. Civ. Proc. Code § 425.16(a); Braun v. Chronicle Publishing Co., 52 Cal. App. 4th 1036, 1042 (1997); Globetrotter Software, Inc. v. Elan Computer Group, Inc., 63 F.Supp.2d 1127, 1128 (N.D. Cal. 1999).  These meritless suits often are referred to as "Strategic Lawsuits Against Public Participation" or "SLAPP" suits, with the result that § 425.16 has come to be called the "Anti-SLAPP statute."  See id. at 1040 & n.1; see also Batzel v. Smith, 333 F.3d 1018, 1023-24 (9th Cir. 2003) ("California law provides for pre-trial dismissal of 'SLAPPs' . . . [which are] lawsuits that 'masquerade as ordinary lawsuits' but are brought to deter common citizens from exercising their political or legal rights or to punish them from doing so.").  Federal courts have repeatedly confirmed that defendants sued in federal courts can bring Anti-SLAPP motions to strike state law claims and that defendants are entitled to attorneys' fees and costs when they prevail.  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1109 (9th Cir. 2003); Verizon Delaware, Inc. v. Covad Commc'ns. Co., 377 F.3d 1081, 1091 (9th Cir. 2004).

The statute states:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Cal. Civ. Proc. Code § 425.16 (stating the statute "shall be construed broadly").

Courts evaluate Anti-SLAPP motions using a two-step process. Commonwealth Energy Corp. v. Investor Data Exchange, Inc., 110 Cal. App. 4th 26, 31 (2003). In the first step, the court determines whether "the defendant has made a threshold showing that the challenged cause of action is one arising from a protected activity." Navellier v. Sletten, 29 Cal.4th 82, 88 (2002). Protected activities include "any act in furtherance of a person's right of petition or free speech under the Untied States or California Constitution in connection with a public issue." Cal. Civ. Proc. Code § 425.16(e).[8] Specifically included in these activities are: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest. Cal. Civ. Proc. Code § 425.16(e). The latter two categories require a specific showing that the action concerns a matter of public interest; the first two categories do not. Briggs v. Eden Council for Hope & Opportunity, 19 Cal.4th 1106, 1117-18 (1999).[9]

Once a defendant establishes the activity is protected under one of the four enumerated categories, the court then determines "whether the plaintiff has demonstrated a probability of prevailing on the claim." Navellier, Cal.4th at 88; Equilon, 29 Cal.4th at 67; Greka Integrated

---

[8] The Court should look to the gravamen of the plaintiff's cause of action to determine whether the cause of action "arises from" protected activity. As the California Supreme Court has explained, "[t]he Anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's activity that gives rise to his or her asserted liability–and whether that activity constitutes protected speech or petitioning." Navellier, 29 Cal.4th at 92; Jarrow Formulas, Inc. v. LaMarche, 31 Cal.4th 728, 734-35 (2003) (the statue does not categorically exempt any particular type of action). "[W]here a cause of action alleges both protected and unprotected activity, the cause of action will be subject to section 425.16 unless the protected activity is 'merely incidental' to the unprotected conduct." Mann v. Quality Old Time Service Inc., 120 Cal. App. 4th 90, 103 (2004).

[9] Defendants need not show that the lawsuit was brought with the subjective intent to "chill" their rights or demonstrate that their rights were actually chilled. See Equilon Enter. v. Consumer Cause Inc., 29 Cal.4th 53, 58-59 (2002).

Inc. v. Lowrey, 133 Cal. App. 4th 1572, 1577 (2005).  "[T]o establish a probability of prevailing on the claim[,] a plaintiff responding to an Anti-SLAPP motion must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."  Huntingdon Life Sciences, Inc. v. Stop Huntington Animal Cruelty USA, Inc., 129 Cal. App. 4th 1228, 1244 (2005) (citations omitted); Dupont Merck Pharm. Co. v. Super. Ct., 78 Cal. App. 4th 562, 568 (2002) ("substantiation" requires more than mere allegations in an unverified complaint; it requires sufficient evidence to permit the court to determine whether "there is a probability that the plaintiff will prevail on the claim").  "In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits."  See Cal. Civ. Proc. Code § 425.16(b)(2).  However, the court should only consider evidence that will be admissible at trial.  Evans v. Unkow, 38 Cal. App. 4th 1490, 1497 (1995).  Finally, the court may consider the substantive merits of the plaintiff's complaint, as well as all available defenses to it, including, but not limited to, constitutional defenses.  ARP Pharmacy Servs., Inc. v. Gallagher Bassett Servs., Inc., 138 Cal. App. 4th 1307, 1323 (2006); Traditional Cat Assn., Inc. v. Gilbreath, 118 Cal. App. 4th 392, 398 (2004).

### B. The Union Defendants' Alleged Actions Forming the Basis of Plaintiff's Third and Sixth Claims Are Protected Under the Last Three of the Anti-SLAPP Statute's Four Categories

#### 1. The Union Defendants' Statements Were Made in Connection with an Issue (Mory I), Under Consideration by a Judicial Body, Namely, the U.S. District Court for the Southern District of California

Statements made in connection with an issue under consideration by a "legislative, executive, or judicial body, or any other official proceeding authorized by law," are subject to the Anti-SLAPP statute.  Cal. Civ. Proc. Code § 425.16(e)(2).  As stated, the Union Defendants are members of the CVPOA, which is a party to Mory I.  At the meeting, the Union Defendants expressed their opinions that it was futile to spend their membership dues to continue the prosecution of Mory I because the case was meritless.  These statements and the tee-shirts expressing support for the Union Defendants were in response to issues (the Mory lawsuits) that are under this Court's consideration.  Therefore, Defendants have satisfied the second category

of the Anti-SLAPP statute.

        **2.    Defendants' Statements Were Made In a Public Forum and Defendants' Conduct Was in Furtherance of the Exercise of the Constitutional Right of Free Speech in Connection With an Issue of Public Interest**

Whether a statement is made in a place open to the public or in a public forum depends on whether the means of communicating the statement permits open debate. Wilbanks v. Wolk 121 Cal. App. 4th 883, 896 (2004); see also Damon v. Ocean Hills Journalism Club, 85 Cal. App. 4th 468, 475-76 (2000) (statements at a meeting of a homeowners' association board of directors constituted statements of public significance in a public forum); Ampex Corp. v. Cargle, 128 Cal .App. 4th 1569, 1576 (2005) (statements made in an internet chat room regarding a publicly traded company constituted statements of public significance in a public forum); ComputerXpress, Inc. v. Jackson, 93 Cal. App. 4th 993, 1007 (2001) (same).

Here, the Union Defendants spoke about the merits of the Mory I lawsuit and the use of their union dues in a forum of open debate. These acts fall under the third category of the Anti-SLAPP statute. Defendants' actions also fit within the fourth category because they made the statements and tee-shirts in furtherance of exercising their right to free speech.

Finally, the union meeting statements and the tee-shirts are based on the Mory lawsuits–issues of "public interest" within the meaning of the Anti-SLAPP statute. At least one court has suggested that the "public issue/interest" requirement can be satisfied if the subject of the statement or activity precipitating the claim involved a person or entity in the public eye or a topic of widespread public interest. Rivero v. American Federation of State, County and Municipal Employees, AFL-CIO, 105 Cal. App. 4th 913, 924 (2003); see also Ruiz v. Harbor View Comm. Ass'n,134 Cal. App. 4th 1456, 1468-70 (2005) (finding private communications with organization members concerning developer's development plans were in the public interest).

In the present action, Plaintiff Mory has held press conferences, she has consented to interviews on television and radio, and several media outlets have discussed the Mory I litigation, including MSNBC, NBC 7/39, KUSI San Diego, Clear Channel Radio, and the San

Diego Union Tribune. [Defs.' Anti-SLAPP Motion at 5-6, 22.] Consequently, Defendants' actions satisfy the third and fourth categories of the Anti-SLAPP Statute.

### C. Plaintiff Fails to Establish a "Probability" of Prevailing On Her Claims

After reviewing, the pleadings and declarations, the Court finds that Plaintiff has failed to establish a probability of prevailing on her third and sixth causes of action. In her declaration, Plaintiff Mory never states that she felt intimidated or harassed by the Union Defendants, nor do the other declarations indicate that she was in fact intimidated. [See Mory Decl.] As discussed, the union meeting statements and the tee-shirts are either protected speech or, at a minimum, trivial nonactionable harms. Last, Plaintiff's allegation that the Union Defendants were encouraged by Captain Hunter, Chief Emerson, and Jim Thomson's actions and/or inactions are wholly unsubstantiated. Thus, this Court **GRANTS** Defendants' motion to strike Plaintiff's third and sixth causes of action under the Anti-SLAPP statute. [10] [11]

### D. Attorneys' Fees

Defendants may only recover fees and costs related to the motion to strike, not the motion to dismiss. Metabolife Int'l Inc. v. Wornick, 213 F.Supp.2d 1220, 1221-24 (S.D. Cal. 2002); Jacobsen v. Katzer, 2006 U.S. Dist. LEXIS 79030 (N.D. Cal. 2006); Lafayette Morehouse, Inc. v. The Chronicle Publishing Co., 39 Cal. App. 4th 1379, 1383 (1996). Nonetheless, some of the fees incurred in drafting the motion to strike may overlap those fees

---

[10] The Court **DENIES** Defendants' motion to strike Plaintiff's first cause of action ("unlawful interference with protected rights") under the Anti-SLAPP statute. Only state claims are subject to the California Anti-SLAPP statute, and, as mentioned, this first claim is vague and unclear as to whether it is based on state or federal law. Vess, 317 F.3d at 1109; Verizon Delaware, Inc., 377 F.3d at 1091.

[11] Plaintiff may argue that the tee-shirts are not protected free speech and that therefore the Anti-SLAPP statute should not apply. The Court has already provided reasons for why the tee-shirts are protected. Nonetheless, as stated, "where a cause of action alleges both protected and unprotected activity, the cause of action will be subject to section 425.16 unless the protected activity is 'merely incidental' to the unprotected conduct." Mann, 120 Cal. App. 4th at 103. Plaintiff's claims are based on both the tee-shirts and the union meeting statements. The union meeting statements are clearly protected speech and are not "merely incidental" to the display of the tee-shirts. Thus, even if the tee-shirts are unprotected speech, Plaintiff's claims are still subject to the Anti-SLAPP statute.

incurred in drafting the motion to dismiss. These fees will also be recoverable since they were "in connection with" the motion to strike and were "necessary to prevail." Metabolife Int'l, 213 F.Supp.2d at 1221-24.

However, as Plaintiff notes, Defendants' billing statements are inadequate because they do not specifically demonstrate what counsel was doing for the claimed amount of time nor clearly show that the fees requested are related to the motion to strike. Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1121 (9th Cir. 2000) (applicant "can meet his burden– although just barely–by simply listing his hours and identifying the general subject matter of his time expenditures"). Defendants must submit those same billing statements in an unredacted form so that the Court may assess the specific fees and so that Plaintiff has an opportunity to respond. Defendants may also supplement the billing statements with declarations that more clearly explain the fees incurred. Thus, the Court **GRANTS** Defendants' motion to strike, finds that attorneys' fees are warranted, and will determine the precise amount of fees after Defendants comply with the above instructions and Plaintiff has an opportunity to respond.[12]

**III.    The Court Adopts Magistrate Judge Major's R&R**

The Court recognizes that Magistrate Judge Major issued an R&R granting and denying in part Defendants' motion to enforce a settlement agreement with Plaintiff. [Doc. No. 77] The parties did not object to the R&R. Good cause appearing, this Court **ADOPTS** Magistrate Judge Major's R&R in its entirety and therefore: **GRANTS** Defendants' motion to enforce their settlement agreement with Plaintiff as to Defendants Becker, Ficacci, Kennedy, Hardman, and Coulson in their individual capacities; **DENIES** Defendants' motion to the extent that they seek dismissal in their official capacities; and **DENIES** Defendant Turner's individual motion to enforce the settlement.

---

[12] Rule 54 of the Federal Rules of Civil Procedure provides in pertinent part: "The court may determine issues of liability for fees before receiving submissions bearing on issues of evaluation of services for which liability is imposed by the court." Fed. R. Civ. Proc. 54(d)(2)(c).

1 **IV.     Plaintiff's Application for a Continuance under Rule 56(f) is Denied**

2       A party seeking a Rule 56(f) continuance must demonstrate "due diligence" both in the
3 pursuit of discovery before the motion for summary judgment was made, and the pursuit of the
4 extension of time after the motion is made. Pfingston v. Ronan Eng'g Co., 284 F.3d 999, 1005
5 (9th Cir. 2002); Monarch Greenback, LLC v. Monticello Ins. Co., 118 F. Supp. 2d 1068,
6 1081-82 (D. Idaho 1999). Courts will deny 56(f) motions if a party had prior opportunities to
7 discover the information and if the information sought is irrelevant. 11-56 Moore's Federal
8 Practice - Civil § 56.10 [8][a]; Nidds v. Schindler Elevator Corp., 113 F.3d 912, 921 (9th Cir.
9 1996) (movant must proffer sufficient facts to show that evidence sought exists and that it would
10 prevent summary judgment); Roark v. City of Hazen, 189 F.3d 758, 762 (8th Cir. 1999) (district
11 court properly denied plaintiff's motion for additional time to complete discovery because
12 plaintiff failed to state what discovery was lacking or what information further discovery might
13 reveal). The party opposing the summary judgment motion must "state with particularity why it
14 is unable to oppose the motion, state with specificity what facts it intends to seek through
15 discovery, and show how its discovery efforts are reasonably expected to create a triable issue."
16 New.Net., Inc. v. Lavasoft, 356 F.Supp.2d 1090, 1101-02 (C.D. Cal. 2004).

17       First, California enacted the Anti-SLAPP statute to provide for the "early dismissal" of
18 meritless aimed at chilling free speech rights. Globetrotter Software, Inc. v. Elan Computer
19 Group, Inc., 63 F.Supp.2d 1127, 1128 (N.D. Cal. 1999). The hearing for this motion has been
20 continued five times already. Judge Houston continued the hearing on August 3, 2007, August
21 30, 2007, and on September 25, 2007. This Court continued the hearing on October 30, 2007
22 and again on January 15, 2008. Granting a sixth continuance for this hearing would contravene
23 the intent of the statute.

24       Second, there appears to be no factual dispute as to what was said at the union meeting.
25 Third, Plaintiff has failed to specifically explain why she cannot adequately oppose the motion at
26 this time or what facts she seeks through discovery. Fourth, Defendants filed their Anti-SLAPP
27 motion on April 30, 2007 and re-filed it with the same arguments on July 2, 2007 to respond to
28 Plaintiff's amended complaint. Plaintiff waited nearly nine months to make this request, filed it

eight days after the Court granted their last request for a continuance, and only six days before today's hearing. The untimeliness and lack of diligence heavily weighs against granting this application. Thus, Plaintiff's application for a continuance under Rule 56(f) is **DENIED**.

## CONCLUSION

For the foregoing reasons, this Court: (1) **DISMISSES** Plaintiff's first, fourth, fifth, seventh, and eighth causes of action without prejudice; (2) **STRIKES** and **DISMISSES** Plaintiff's third and sixth causes of action with prejudice; (3) **ADOPTS** Magistrate Judge Major's R&R; and (4) **DENIES** Plaintiff's application for a continuance under Rule 56(f). [13]

DATED: February 11, 2008

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge

---

[13] The parties' evidentiary objections are **DENIED** as moot because they did not affect this Court's determination on the motions before the Court. To the extent that the Court did rely on any evidence objected to, the objections are overruled.