1

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                          **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   DEANNA MICHELLE MORY, et al.,                    CASE NO. 07-CV-462 JLS (WVG)

12                              Plaintiff,            **ORDER: (1) DENYING**
                                                      **DEFENDANT CITY OF CHULA**
13          vs.                                       **VISTA'S MOTION FOR**
                                                      **SUMMARY JUDGMENT AND (2)**
14   CITY OF CHULA VISTA, et al.,                     **GRANTING PARTIAL SUMMARY**
                                                      **JUDGMENT**
15                              Defendant.
                                                      (Doc. No. 207)
16

17          Presently before the Court is Defendant City of Chula Vista's motion for summary judgment

18   on Plaintiff Deanna Michelle Mory's second and sole remaining cause of action for violation of the

19   Fair Labor Standards Act (FLSA).  (Doc. No. 207.)  For the following reasons, the Court **DENIES**

20   Defendant's motion as it pertains to Plaintiff's entire claim.  However, the Court **GRANTS** partial

21   summary judgment as to certain issues underlying Plaintiff's claim.

22                                      **BACKGROUND**

23          On April 22, 2005, Plaintiff began working as a police recruit for the Chula Vista Police

24   Department (CVPD).  (Zappia Decl. Ex. A, at 44.)  Plaintiff spent six months in the police academy,

25   and in October 2005, she entered CVPD's Field Training Officer program.  (*Id.* Ex. B, at 8.)  Plaintiff

26   achieved permanent status as a police officer in October 2006, at the expiration of CVPD's eighteen-

27   month probationary period for new recruits.  (*Id.* Ex. B, at 6–7.)  Plaintiff remained a police officer

28   until she was terminated on October 22, 2008.  (Turner Decl. Ex. A.)

                                             - 1 -

Plaintiff alleges that, during her employment with CVPD, she regularly worked in excess of forty hours per week. (FAC ¶¶ 54.) In accordance with CVPD's policies and procedures, Plaintiff submitted Overtime Request forms to obtain compensation for 337.75 hours of overtime worked between June 27, 2005 and August 7, 2008. (Turner Decl. Ex. F.) Defendant compensated Plaintiff on all overtime requests Plaintiff submitted. (*Id.* Ex. G.) However, Plaintiff alleges that CVPD expected her to work—and that she did in fact work—additional overtime for which she did not submit overtime requests or receive compensation. (FAC ¶¶ 56–57; Opp'n 2–4; Mory Decl. ¶ 6.)[1] Additionally, Plaintiff alleges that she was entitled to compensation under the FLSA for time spent changing into and out of her uniform at the police station. (Opp'n 3–4.)

Plaintiff initially filed this action on March 13, 2007 and amended her complaint on June 14, 2007. (Doc. Nos. 1, 27.) On February 11, 2008, the Court dismissed without prejudice Plaintiff's first, fourth, fifth, seventh, and eighth causes of action, and dismissed with prejudice Plaintiff's third and sixth causes of action. (Doc. No. 98.) Plaintiff elected not to amend her complaint. On May 28, 2010, Defendant moved for summary judgment on Plaintiff's second and only remaining cause of action for violation of the FLSA. (Doc. No. 207.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 permits a court to grant summary judgment where (1) the moving party demonstrates the absence of a genuine issue of material fact and (2) entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Material," for purposes of Rule 56, means that the fact, under governing substantive law, could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *Celotex*, 477 U.S. at 323. The movant can carry his burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by

---

[1] Defendant has filed objections to various evidence in support of Plaintiff's opposition to the motion for summary judgment, including Plaintiff's declaration. (*See* Doc. Nos. 216-2 to -6.) The Court relies only on admissible evidence in conjunction with this motion.

1   demonstrating that the nonmoving party "failed to make a sufficient showing on an essential element

2   of her case with respect to which she has the burden of proof."  *Id.* at 322–23.  "Disputes over

3   irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc.*

4   *v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

5        Once the moving party establishes the absence of genuine issues of material fact, the burden

6   shifts to the nonmoving party to set forth facts showing that a genuine issue of disputed fact remains.

7   *Celotex*, 477 U.S. at 324.  The nonmoving party cannot oppose a properly supported summary

8   judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S.

9   at 256.  When ruling on a summary judgment motion, the court must view all inferences drawn from

10  the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*

11  *v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

12       Federal Rule of Civil Procedure 56(d) provides for partial summary judgment.  *See* Fed. R.

13  Civ. P. 56(d)(1) ("If summary judgment is not rendered on the whole action, the court should, to the

14  extent practicable, determine what material facts are not genuinely in issue. . . . It should then issue

15  an order specifying what facts . . . are not genuinely at issue.  The facts so specified must be treated

16  as established in the action.").  Under Federal Rule of Civil Procedure 56(d), a court may grant

17  summary judgment on less than the non-moving party's entire claim. *Zapata Hermanos Sucesores,*

18  *S.A. v. Hearthside Baking Co.*, 313 F.3d 385, 391 (7th Cir. 2002) (Posner, J.).  "The partial summary

19  judgment is merely a pretrial adjudication that certain issues shall be deemed established for the trial

20  of the case.  This adjudication . . . serves the purpose of speeding up litigation by eliminating before

21  trial matters wherein there is no genuine issue of fact." Fed. R. Civ. P. 56 advisory committee's note.

## ANALYSIS

23       Plaintiff alleges that she is entitled to overtime compensation under the FLSA for time spent

24  performing several activities: (1) donning and doffing her police uniform and related gear at the police

25  station;  (2) doing  "homework" during the police academy; and (3) writing incident reports and

26  preparing for court appearances.  (*See* Opp'n 5–25.)  Plaintiff also alleges that she is entitled to

27  compensation for missed lunch breaks and "pre-shift work . . . ." (Opp'n 25.) Defendant, on the other

28  hand, variously contends that Plaintiff is not entitled to compensation for these activities as a matter

of law, or that Plaintiff has already received compensation for these activities.  (*See* Mem. ISO MSJ 9–20; Reply 3–9.)  Having reviewed the instant motion, Plaintiff's opposition, and Defendant's reply, the Court **DENIES** Defendant's motion as it pertains to Plaintiff's entire claim.  However, the Court **GRANTS** partial summary judgment on certain issues underlying Plaintiff's claim.

## I.        Defendant's Objection to Oliver Lee Drummond's Declaration

As an initial matter, Defendant objects to Oliver Lee Drummond's declaration, which Plaintiff submitted in opposition to Defendant's motion for summary judgment.  (*See* Objections to Oliver Lee Drummond's Declaration.)  Defendant contends that the Court should exclude Mr. Drummond's declaration in its entirety because Plaintiff did not designate Mr. Drummond as an expert witness by the discovery deadline.  (*Id.* at 2; *see* Hadaegh Decl. ¶ 3; *id.* Ex. 2 (Plaintiff's expert designation); *id.* Ex. 3 (Plaintiff's supplemental expert designation); *id.* Ex. 6 (amended case management conference order regulating discovery).)

On November 25, 2009, Magistrate Judge Gallo issued an amended case management conference order requiring both parties to designate their experts and disclose any reports by March 1, 2010.  (*See* Doc. No. 177, at 1 ("<u>All</u> discovery, *including expert discovery*, shall be completed on or before <u>March 1, 2010</u>." (second emphasis added)).)  However, Plaintiff waited to designate Mr. Drummond as an expert until she filed her opposition to Defendant's motion for summary judgment on August 11, 2010.  (*See* Doc. No. 215; *see also* Drummond Decl. ¶ 1 (describing Mr. Drummond as "an *expert* in the field of law enforcement and police administration").)  It does not appear that Plaintiff has proffered Mr. Drummond's expert report or made him available for deposition.  *See* Fed. R. Civ. P. 26(a)(2)(B).

Defendant's objection is well taken.  Because Plaintiff has failed to justify her disregard for the amended case management conference order, the Court will not consider Mr. Drummond's untimely declaration for purposes of this motion for summary judgment.  *See, e.g.*, *Wong v. Regents of University of California*, 410 F.3d 1052, 1060–62 (9th Cir. 2005) (upholding district court's exclusion of testimony from untimely designated expert witness submitted in opposition to motion for summary judgment); *Quevedo v. Trans-Pacific Shipping, Inc.*, 143 F.3d 1255, 1258 (9th Cir. 1998) (same).  Accordingly, Defendant's objection is **SUSTAINED**.

1    **II.    Plaintiff Is Not Entitled to Compensation for Time Spent Donning and Doffing Her**
2    **Uniform and Related Gear**

3    "It is axiomatic, under the FLSA, that employers must pay employees for all hours worked."
4    *Alvarez v. IBP, Inc.*, 339 F.3d 894, 902 (9th Cir. 2003), *aff'd on other grounds sub nom. IBP, Inc. v.*
5    *Alvarez*, 546 U.S. 21 (2005) (citations and internal quotation marks omitted).  "Work, the Supreme
6    Court has long noted, is physical or mental exertion (whether burdensome or not) controlled or
7    required by the employer and pursued necessarily and primarily for the benefit of the employer." *Id.*
8    (citing *Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944)) (internal
9    quotation marks omitted).  However, "[t]hat [an] activity is 'work' as a threshold matter does not mean
10   without more that the activity is necessarily compensable.  The Portal-to-Portal Act of 1947 relieves
11   an employer of responsibility for compensating employees for 'activities which are preliminary or
12   postliminary to [the] principal activity or activities' of a given job." *Alvarez*, 339 F.3d at 902 (quoting
13   29 U.S.C. § 254(a) (1999)) (second alteration in original).

14   The Portal-to-Portal Act, however, does not relieve an employer of responsibility for
15   compensating employees for *all* activities that take place before or after the regular work shift.  *See*
16   *Steiner v. Mitchell*, 350 U.S. 247, 252–253 (1956).  "[A]ctivities performed either before or after the
17   regular work shift, on or off the production line, are compensable under the portal-to-portal provisions
18   under the Fair Labor Standards Act if those activities are an *integral and indispensable part* of the
19   principle activities for which [employees] are employed . . . ." *Id.* at 256.

20   The Ninth Circuit has thrice considered whether donning and doffing of clothing and other
21   gear are compensable activities under the FLSA.  *See Bamonte v. City of Mesa*, 598 F.3d 1217 (9th
22   Cir. 2010); *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901 (9th Cir. 2004); *Alvarez*, 339 F.3d 894.
23   In *Alvarez*, plaintiff employees of a meat processing plant sought compensation under the FLSA for
24   "(1) the pre-shift donning of protective gear and the preparation of work-related tools . . . ; (2) the
25   requisite donning and doffing of protective gear during the . . . meal-break; and (3) the post-shift
26   doffing, cleaning, and storing of protective gear and tools." *Id.* at 900.  The *Alvarez* court used a
27   three-stage inquiry in resolving the issue presented: "The first stage addressed whether the activity
28   constituted 'work'; the second stage addressed whether the activity was an 'integral and indispensable'

duty; and the third stage addressed whether the activity was *de minimis*."[2]  *Bamonte*, 598 F.3d at 1224

(citing *Alvarez*, 339 F.3d at 902–03).  In holding that the plaintiff employees' donning and doffing at

the plant satisfied the "integral and indispensable" test—the second stage of the inquiry—the court

relied heavily on the fact that "the donning and doffing of this gear on the . . . plant's 'premises [were]

*required* by law, by rules of [IBP], [and] by the nature of the work . . . ."  *Alvarez*, at 903 (second and

third alterations in original) (emphasis added).  Plaintiff employees' on-premises donning and doffing

were also done for the benefit of IBP—the activities allowed IBP to satisfy its requirements under the

law and prevented unnecessary workplace injury and contamination.  *Id.*  Thus, plaintiff employees'

donning and doffing were compensable under the FLSA.  *Id.* at 904; *see also Ballaris*, 370 F.3d at

911–912 (finding the donning and doffing of uniforms at a silicon wafer manufacturing plant

compensable under the FLSA because, *inter alia*, the employer required the plaintiff employees to

change into and out of their uniforms at the plant).

        In *Bamonte*, the court addressed facts similar to those presented here.  598 F.3d at 1219–20.

Plaintiff police officers sought compensation under the FLSA for time spent donning and doffing their

uniforms and related gear on Defendant City of Mesa's premises.  *Id.* at 1220.  The officers had the

option to don and doff at home; "no requirement [was] imposed on officers by the City."  *Id.*

However,  the officers explained that they *preferred* to don and doff their gear at the police station.

*Id.*

> The explanation included the following considerations: (1) the risk of loss or theft of uniforms and gear at home; (2) potential access to the gear by family members or guests; (3) distractions at home that might interfere with the donning process; (4) safety concerns with performing firearms checks at home; (5) discomfort associated with wearing the gear while commuting; (6) the increased risk of being identified as a police officer while off-duty; and (7) potential exposure of family members  to contaminants and bodily fluids.

*Id.*  The officers also emphasized the relationship between their uniforms and gear and the

performance of their law-enforcement duties.  *Id.*  "Specifically, the officers relayed their belief that

---

[2] The first and third stages of the *Alvarez* inquiry are not relevant here; rather, Plaintiff's claim rises and falls on whether donning and doffing her uniform and related gear on defendant's premises were "integral and indispensable" duties.  *Compare Alvarez*, 339 F.3d at 902–903, *and Ballaris*, 370 F.3d at 911–12 (finding donning and doffing of uniform on employer's premises integral and indispensable duties), *with Bamonte*, 598 F.3d at 1226 (declining to find donning and doffing of uniform and related gear on employer's premises integral and indispensable duties).

the uniforms and gear contribute[d] to their command presence, thereby promoting officer and public

safety in furtherance of law enforcement goals." *Id.*

Applying *Alvarez*'s three-stage inquiry to the officers' claim, the court held that the officers'

on-premises donning and doffing of their uniforms and related gear did not constitute integral and

indispensable work activities. *Id.* at 1226. In contrast to *Alvarez* and *Ballaris*, "the officers . . . cited

no law, rule, or regulation mandating on-premises donning and doffing." *Id.* at 1225. Nor did the

officers identify how on-premises donning and doffing conferred a benefit on the City. *Id.* Rather,

"the officers urged a conclusion of compensability primarily for reasons that were of sole benefit to

the employee . . . ." *Id.* at 1225–26.

The court also found persuasive a 2006 Department of Labor memorandum addressing the

compensability of donning and doffing of clothing and gear at home. *See id.* at 1227–29. The DOL

advised that:

> [D]onning and doffing of related gear is within the continuous workday only when the
> employer or the nature of the job *mandates* that it take place on the employer's
> premises. It is our longstanding position that if employees have the *option* and *ability*
> to change into the required gear at home, changing into that gear is not a principal
> activity, even when it takes place at the plant.

Dep't of Labor, Wage and Hour Advisory Memorandum No. 2006-2, at 3 (2006) (emphasis added).[3]

The court further noted "that the relevant inquiry is not whether the uniform *itself* or the safety gear

*itself* is indispensable to the job—they most certainly are—but rather, the relevant inquiry is whether

the nature of the work requires the donning and doffing *process* to be done on the employer's

premises . . . ." *Bamonte*, 598 F.3d at 1228 (quoting *Abbe v. City of San Diego*, 2007 WL 4146696,

at *7 (S.D. Cal. Nov. 9, 2007) (Sabraw, J.)) (emphasis in original). Thus, because the officers had the

---

[3] At oral argument, Plaintiff's counsel asserted that *Bamonte* no longer controls because the DOL has "reversed" its 2006 memorandum. The Court has reviewed the 2010 DOL memorandum and finds counsel's representations at oral argument disingenuous at best. First, the 2010 DOL memorandum offers an "interpretation of the term 'clothes' in [29 U.S.C.] § 203(o)"—a statute not at issue in this case. Dep't of Labor, Administrator's Interpretation No. 2010-2, at 1 (2010). Although the 2010 DOL memorandum indicates that "donning and doffing, which may include changing clothes, *can* be a 'principal activity' under the Portal to Portal Act," it does not suggest that donning and doffing are *necessarily* principal activities. *Id.* at 4 (emphasis added). Second, the 2010 DOL memorandum does not once mention the 2006 DOL memorandum that the *Bamonte* court found persuasive, let alone purport to reverse it. And third, the 2010 DOL memorandum does not criticize or even mention the Ninth Circuit's decision in *Bamonte*, despite the fact that the DOL issued the 2010 memorandum almost three months after the Ninth Circuit decided *Bamonte*. Thus, the Court finds that the 2010 DOL memorandum has no bearing on Plaintiff's case.

1   option to don and doff their uniforms and related gear at home and only changed at the police station

2   as a matter of preference, the officers' on-premises donning and doffing of their uniforms and related

3   gear were not compensable under the FLSA. *Bamonte*, 598 F.3d at 1232–33.

4         *Bamonte* directly controls the outcome in this case. Like the officers in *Bamonte*, Plaintiff has

5   "cited no law, rule, or regulation mandating on-premises donning and doffing." 598 F.3d at 1226.

6   To the contrary, Defendant gave Plaintiff the option of donning and doffing her uniform and related

7   gear at home, so long as Plaintiff kept her uniform covered "while en route to or from work, court or

8   other assignment." (Turner Decl. Ex. D, at 2–3; *see also* Turner Decl. Ex. E, at 23 ("Recruits will,

9   at all times, cover their uniforms with a civilian outer garment when worn off campus.").) Nor does

10  Plaintiff identify how her *on-premises* donning and doffing conferred a benefit on Defendant. Rather,

11  Plaintiff's decision to change into and out of her uniform at the police station reflects the same

12  personal preference expressed by the officers in *Bamonte*. (*See* Mory Decl. 4 (explaining why

13  Plaintiff changed at the police station).) Because Plaintiff had the option to change into and out of her

14  uniform and related gear at home and only changed at the police station as a matter of preference,

15  Plaintiff's on-premises donning and doffing did not constitute integral and indispensable work

16  activities.

17        Plaintiff cites a variety of benefits to Defendant flowing from Plaintiff's and other officers'

18  donning and doffing of their uniforms and related gear. (*See* Opp'n 12–17.) These benefits include

19  (1) ensuring compliance with California Penal Code section 830.10, which requires uniformed police

20  officers to "wear a badge, nameplate, or other device which bears clearly on its face the identification

21  number or name of the officer"; (2) "maintaining a healthy and safe workforce" by ensuring that

22  police officers are equipped to respond as necessary to a myriad of situations; and (3) ensuring that

23  police officers display an appropriate "command presence." (Opp'n 12–14.) The Court does not

24  dispute that Defendant benefits from having its officers in uniform. However, that Defendant benefits

25  from having its officers in uniform does not *ipso facto* render plaintiff's *on-premises* donning and

26  doffing of her uniform and related gear an integral and indispensable duty. *See Martin v. City of

27  Richmond*, 504 F. Supp. 2d 766, 774 (N.D. Cal. 2007) ("[N]o matter how helpful or socially

28  significant a particular outfit might be to the performance of an employee's duties, the law rejects the

- 8 -

idea that donning and doffing of mere clothes is enough to establish an employee's right to compensation under the FLSA."). Presumably, Defendant received the same benefit whether Plaintiff changed into and out of her uniform at home or at work, so long as Plaintiff wore her uniform and related gear while on duty. Plaintiff's failure to identify how Defendant benefitted from her on-premises donning and doffing also precludes a finding of compensability. *See Bamonte*, 598 F.3d at 1225.

Plaintiff attempts to distinguish *Bamonte* on the ground that "the restrictions on a peace officer in California are not those of an officer in Arizona . . . ." (Opp'n 15.) Plaintiff contends that requirements of California police officers are "more structured and controlled" than those of Arizona Police officers. (*Id.*) In support of her argument, Plaintiff cites California Penal Code section 830.10, which requires police officers to wear identification badges, and California Government Code section 50081, which requires law-enforcement agencies to furnish newly hired police officers with certain safety equipment. The Court fails to see how the California statutes Plaintiff cites render *Bamonte* inapplicable to California law-enforcement officers. Neither statute requires California law-enforcement officers to don and doff their uniforms and related gear on their employers' premises. And the *Bamonte* court recognized that the Arizona officers' uniform and gear were "indispensable to the job"—the exact claim Plaintiff makes here. 598 F.3d at 1228 (quoting *Abbe*, 2007 WL 4146696, at *7). Accordingly, the Court sees no basis for holding *Bamonte* inapplicable here.

Perhaps recognizing the futility of her central thesis—that *Bamonte* does not control—Plaintiff argues in the alternative that she is at least entitled to compensation for time spent donning and doffing "unique safety equipment." (Opp'n 17.) Plaintiff relies on *Martin* in support of this alternative argument. (*Id.*) Although the *Martin* court recognized and accepted the proposition "that the donning and doffing of protective gear at home typically renders that activity non-compensable," 504 F. Supp. 2d at 775, it nevertheless denied summary judgment on the City of Richmond's claim that its officers' on-premises donning and doffing of "duty equipment" were not compensable under the FLSA, *id.* at 774–77.[4] However, *Bamonte* makes no distinction between the officers' uniforms and the

---

[4] To explain their preference for donning and doffing their safety gear at the police station, the officers in *Martin* cited many of the same safety and comfort concerns raised by the officers in *Bamonte*. *Compare Martin*, 504 F. Supp. 2d at 775, *with Bamonte*, 598 F.3d at 1220. Plaintiff cites

accompanying gear. *See* 598 F.3d at 1228. The Court is bound by *Bamonte*, and to the extent that *Martin* is at all inconsistent with *Bamonte*, it is overruled. *See Edgerly v. City and County of San Francisco*, 599 F.3d 946, 956 n.14 (9th Cir. 2010). Thus, Plaintiff's alternative argument also fails.

Plaintiff has failed to raise a genuine issue of material fact that the donning and doffing of her uniform and related gear at the police station are compensable activities under the FLSA. Accordingly, the Court **GRANTS** summary judgment on this aspect of Plaintiff's claim.

### III.   Genuine Issues of Fact Exist Regarding Whether Plaintiff Is Entitled to Compensation for Time Spent Doing "Homework"

Under the FLSA, "[p]olice officers . . , who are in attendance at a police or fire academy or other training facility, are not considered to be on duty during those times when they are not in class or at a training session, *if they are free to use such time for personal pursuits*. Such free time is not compensable." 29 C.F.R. § 553.226(c) (2010) (emphasis added). Thus, if an attendee at a police academy is free to use the time that she is not in class "to watch television, talk on the telephone, read, or engage in any other desired endeavor," such time is not compensable. *Banks v. City of Springfield*, 959 F. Supp. 972, 977 (N.D. Ill. 1997). However, time spent predominately for the benefit of the employer is compensable.[5] *Id.*

Plaintiff alleges that she is entitled to compensation for various "homework" activities that Defendant required her to perform during her time in the police academy.[6] The Court addresses each

_____

the same concerns here. (Mory Decl. 4.)

[5] Defendant relies on a California Department of Industrial Relations, Division of Labor Standards Enforcement opinion letter for the proposition that "there is no unfair economic benefit derived from a probationary officer studying voluntarily during his or her own time, because it helps that probationary officer complete a city-mandated prerequisite to become a police officer." (Opp'n 14 (citing Cal. Dep't of Indus. Relations, Div. of Labor Standards, Opinion Letter, Whether Pre-Employment State Mandated Security Officer Training Time Is Compensable (2007).) Only to the extent that this statement is consistent with 29 C.F.R. § 553.226(c), the Court agrees with Defendant. However, the Court notes that Plaintiff brings her claim under the FLSA, not California law.

[6] As an initial matter, the Court disagrees with Defendant's interpretation of 29 C.F.R. § 553.226(b)(1) (2010), which states: "Attendance outside of regular work hours at specialized or follow-up training, which is *required by law* for certification of public and private sector employees within a particular governmental jurisdiction (e.g., certification of public and private emergency rescue workers), does not constitute compensable hours of work for public employees within that jurisdiction . . . ." First, the Court disagrees that the types of activities Plaintiff seeks compensation for constitute "specialized or follow-up training." *Id.* This language appears to contemplate some

1  activity in turn.

2           A.    Uniform Maintenance

3           During the police academy, police recruits must be prepared for uniform inspections at any

4  time. (Turner Decl. Ex. E, at 24.)  "Recruit uniforms [must] be clean and in a pressed condition," and

5  "[s]hoes and leather gear [must] be clean and highly shined." (*Id.*)  In discovery, Plaintiff testified that

6  she spent "[a]t least an hour a night" during her time in the police academy preparing her uniform for

7  the next day. (Barker Decl. Ex. 1 (Mory Dep. 1), at 31.)  Defendant contends that Plaintiff is not

8  entitled to compensation for this activity because she "had the freedom for personal pursuits such as

9  watching TV while maintaining her . . . uniform." (Mem. ISO MSJ 15.)

10          Considering both parties' evidence in the light most favorable to Plaintiff, the Court finds that

11  a genuine issue of material fact exists regarding whether Plaintiff is entitled to compensation for time

12  spent maintaining her uniform.  It is undisputed that Defendant's Recruit Policy and Procedure

13  Manual required Plaintiff to maintain her uniform according to certain specifications. (Turner Decl.

14  Ex. E, at 24.)  Defendant effectively admits that Plaintiff was required to maintain her uniform at

15  home and while off duty. (*See* Mem. ISO MSJ 15.)  Plaintiff was *not* free to use the time she spent

16  maintaining her uniform to "engage in any . . . desired endeavor." *Banks*, 959 F. Supp. at 977.  For

17  example, the Court doubts that Defendant would contend that Plaintiff could cook dinner or exercise

18  while maintaining her uniform.  Accordingly, the Court **DENIES** summary judgment on this aspect

19  of Plaintiff's claim.

20          B.    Firearm Maintenance

21          Defendant's Recruit Policy and Procedure Manual states: "Recruits shall clean [their]

22  weapons . . . after each use, and maintain them in a manner which meets Academy standards. *The*

23  *cleaning of weapons on campus is prohibited*." (Turner Decl. Ex. E, at 29 (emphasis added).)

24  Plaintiff claims to have spent "[forty-five] minutes to an hour a night" cleaning her weapon. (Mory

25  Dep. 1, at 45.)  Defendant contends that Plaintiff is not entitled to compensation for time spent

26  _____

27  degree of formality, whereas Plaintiff seeks compensation for activities she performed off duty and
    at her leisure.  Second and more importantly, Defendant has not cited any state law that required
28  Plaintiff to, *inter alia*, maintain her uniform and firearm.  Accordingly, the Court finds Defendant's
    citations to 29 C.F.R. § 553.226(b)(1) inapposite here.

cleaning her weapon because Plaintiff performed this task in the privacy of her home, "while she had the freedom for personal pursuits such as watching TV . . . ."  (Mem. ISO MSJ 15.)

Considering both parties' evidence in the light most favorable to Plaintiff, the Court finds that a genuine issue of material fact exists regarding whether Plaintiff is entitled to compensation for time spent cleaning her weapon.  Defendant contends that the much of the time Plaintiff spent cleaning her weapon resulted from her daily off-duty shooting practice, discussed *infra*.  (Mem. ISO MSJ 17.) However, it is undisputed that Plaintiff was required to complete a minimum of sixty-eight hours of compensated firearms training (Turner Decl. ¶ 3), and that she was required to clean her firearm after each use (Turner Decl. Ex. E, at 29).  Because Defendant's Recruit Policy and Procedure Manual prohibited the cleaning of weapons on campus, Defendant was *necessarily* required to spend some amount of her off duty time cleaning her weapon.  (*See id.*)  Thus, Plaintiff was necessarily *not* free to use some amount of her off duty time for personal pursuits.  29 C.F.R. § 553.226.

The Court finds misguided Defendant's argument that Plaintiff is not entitled to compensation for time spent cleaning her weapon because she did so in the privacy of her own home and could simultaneously watch television.  The Court doubts that Defendant would contend that Plaintiff was free to "talk on the telephone, read, or engage in any other desired endeavor" while cleaning her firearm.  *Banks*, 959 F. Supp. at 977.  Nor does the location in which Plaintiff performed this activity have any bearing on whether it is compensable; by its terms, 29 C.F.R. § 553.226 requires an employer to compensate an attendee at a police academy for any time the attendee is not free to use for personal pursuits, regardless of where the attendee spends that time.  Accordingly, the Court **DENIES** summary judgment on this aspect of Plaintiff's claim.

C.  Physical Fitness Training

During the police academy, police recruits must complete fifty-one hours of compensated physical fitness training.  (Turner Decl. ¶ 8).  Defendant's Recruit Policy and Procedure Manual encourages—but does not require—off duty physical fitness training.  (*Id.* Ex. E, at 18.)  Defendant contends that Plaintiff is not entitled to compensation for off duty physical fitness training as a matter of law because off duty physical fitness training is not mandatory.  (Mem. ISO MSJ 17–18.)

In discovery, Plaintiff testified that despite Defendant's official policy, she was required to

1   perform thirty to sixty minutes of additional uncompensated physical fitness training per day. (Mory

2   Dep. 1, at 31–33.)  Plaintiff also testified that she was required to keep a record of her off-duty

3   physical fitness training and turn the record in to Matt Smith of the CVPD every week. (*Id.* at 31–32;

4   *see also* Opp'n 20–21.)

5         Considering Plaintiff's deposition testimony in the light most favorable to her, the Court finds

6   that genuine issues of material fact exist regarding whether Defendant *required* Plaintiff to engage in

7   additional physical fitness training.  If Defendant required Plaintiff to engage in additional physical

8   fitness training, then Plaintiff was not free to use the time she spent engaging in additional physical

9   fitness training for personal pursuits.  *See* 29 C.F.R. § 553.26.  Accordingly, the Court **DENIES**

10  summary judgment on this aspect of Plaintiff's claim.

11       D.     <u>Shooting Practice</u>

12        Police recruits also must complete sixty-eight hours of compensated firearm training while on

13  duty in the academy. (Turner Decl. ¶ 3.)  "Any other shooting practice time outside of regular training

14  hours is not required, and it is in the discretion of the trainee to practice while on duty." (*Id.*; *see also*

15  *id.* Ex. D, at 29 (authorizing off duty shooting practice).)  Defendant contends that Plaintiff is not

16  entitled to compensation for additional off duty shooting practice as a matter of law because additional

17  shooting practice is not mandatory. (Mem. ISO MSJ 16.)

18        Plaintiff testified that she practiced shooting off duty "every day." (Zappia Decl. Ex. A, at 44.)

19  However, admitted that she was at the shooting range every day because she was up for an award as

20  the best shooter in her class at the police academy. (*Id.*)  Additionally, because Defendant reserved

21  the Otay shooting range on some weekends, Plaintiff "understood that she was expected to be there"

22  on weekends to practice her shooting. (Mory Decl. ¶ 4; *see also* Mory Dep. 1, at 46 ("It was kind of

23  one of those things where the general understanding was if the instructors were going to be there and

24  they were going to open the range for us, we had better be there.").)  However, Plaintiff "was never

25  told specifically [that she was] ordered to go practice at the firing range." (Mory Dep. 1, at 45.)

26  Rather, Plaintiff was simply instructed to make sure that she was prepared for whatever tests might

27  occur. (*Id.*)

28        Considering Plaintiff's deposition testimony and declaration in the light most favorable to her,

1    the Court finds that no genuine issue of material fact exists regarding whether Plaintiff is entitled to

2    compensation under the FLSA for her additional off duty shooting practice.  Plaintiff admitted that

3    much of her additional shooting practice was for her own personal gain.  (*See* Zappia Decl. Ex. A, at

4    44.)  And Plaintiff's admitted that no one ever ordered her to practice at the Otay shooting range on

5    the weekends.  (Mory Dep. 1, at 45.)  Accordingly, Plaintiff was free to use the time she spent on

6    additional off duty shooting practice for personal pursuits; Plaintiff simply chose to spend this time

7    practicing her shooting.  Accordingly, the Court **GRANTS** summary judgment on this aspect of

8    Plaintiff's claim.

9        E.    Defensive Tactics Practice

10   Plaintiff also seeks compensation for time spent practicing defensive tactics.  (Opp'n 22.)  In

11   her declaration, Plaintiff states that she was "highly encouraged" to practice her defensive tactics.

12   (Mory Decl. ¶ 5.)  She was told "that to become proficient and learn the moves well enough to use

13   them in a stressful situation out in the field, [she] had to practice them outside of class on [her] own

14   time."  (*Id.*)  She regularly met with her classmates to practice her defensive tactics.  (*Id.*)  Defendant

15   contends that Plaintiff is not entitled to compensation for defensive tactics practice as a matter of law

16   because defensive tactics practice is not mandatory.  (Mem. ISO MSJ 17–18.)

17   Considering Plaintiff's declaration in the light most favorable to her, the Court finds that no

18   genuine issue of material fact exists regarding whether Plaintiff is entitled to compensation for time

19   spent practicing defensive tactics.  Plaintiff's declaration makes clear that defensive tactics practice

20   was not mandatory; Plaintiff could have used the time she spent practicing defensive tactics for

21   personal pursuits.  *See* 29 C.F.R. § 553.26.  Accordingly, the Court **GRANTS** summary judgment on

22   this aspect of Plaintiff's claim.

23       F.    Study Time

24   Finally, Plaintiff seeks compensation for time spent taking written practice tests.  (Opp'n

25   22–23.)  Plaintiff spent a minimum of forty minutes to an hour per night studying outside of class.

26   (Mory Dep. 1, at 24–25.)  However, Plaintiff does not claim that Defendant *required* her to spend this

27   time studying; she merely alleges that it was "general knowledge that [she] would be spending time

28   outside of the academy" studying.  (*Id.* at 23.)  Defendant contends that it is entitled to summary

1  judgment on this aspect of Plaintiff's claim because "[i]t was Plaintiff's discretion and for her personal

2  gain to study at home."  (Mem. ISO MSJ 16.)

3       Considering Plaintiff's testimony in the light most favorable to her, the Court finds that no

4  genuine issue of material fact exists regarding whether plaintiff is entitled to compensation for time

5  spent studying.  Plaintiff does not claim that Defendant required her to study.  Although the parties

6  presented limited briefing and evidence on this issue, it appears clear that Plaintiff was free to spend

7  the time she spent studying for personal pursuits.  *See* 29 C.F.R. § 553.26; *see also Banks*, 959 F.

8  Supp. at 978 (finding time in which attendees at a police training facility were free to study not

9  predominately for employer's benefit).  Plaintiff, however, apparently thought it prudent and chose

10  to spend this time studying.  Accordingly, the Court **GRANTS** summary judgment on this aspect of

11  Plaintiff's claim.

12  **IV.    Plaintiff Is Not Entitled to Compensation for Time Spent Writing Incident Reports and**

13  **Traveling to and Preparing for Court**

14       The FLSA requires employers to compensate employees for all hours worked.  *Alvarez*, 339

15  F.3d at 902.  "Work not requested but suffered or permitted is work time."  29 C.F.R. § 785.11 (2010).

16  Thus, if an employer has knowledge that an employee is or was working beyond the end of her shift,

17  the employer must compensate the employee for that time.  *Id.*; *see Fox v. Summit King Mines, Ltd.*,

18  143 F.2d 926, 932 (9th Cir. 1944) ("[T]he words 'suffer' and 'permit' as used in [the] statute mean[]

19  'with knowledge of the employer.'").  "An employer who is armed with [knowledge that an employee

20  is or was working overtime] cannot stand idly by and allow an employee to work without proper

21  compensation, even if the employee foes not make a claim for the overtime compensation."  *Forrester*

22  *v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981).

23       At all times relevant to this litigation, Defendant's Memorandum of Understanding with the

24  Chula Vista Police Officer's Association (MOU) governed the overtime compensation of CVPD's

25  law-enforcement personnel, including Plaintiff.[7]  (*See id.* Ex. C.)  Article 2.02 of the MOU provides,

26  in relevant part, as follows:

27

28       [7] Defendant enacted the MOU's Article 2.02 overtime exception under 29 U.S.C. § 207 (2010)
(the 7k exemption).  *See* 29 C.F.R. § 553.201 (2010).

I.   Subject to the provisions of Paragraphs II through IV below, when an employee is ordered to:

   A.   Work on his or her day off; or

   B.   Report back to work after he or she has left the station; he or she shall ube compensated for a minimum of two hours for any time worked in accordance with the provisions of the [FLSA] and the 7k exemption. . . .

     . . . .

II.  Holdovers Beyond Regular Shift - An employee who works beyond his or her regular scheduled shift by reason of, but not limited to, late calls, arrests, report preparation, etc. shall receive payment in accordance with I.B. above. In no event will an employee be paid for less than 5 minutes. Periods of time less than 15 minutes will be disregarded and may not accumulated [sic].

III. Court Time - Employees on scheduled time off, who are subpoenaed in the line of duty or required by the Chief of Police or his designee to be present in criminal or juvenile court, or other judicial proceedings, *shall be compensated as provided under Article 2.02, [I.B] above for all time actually spent and required to be in court and all actual travel time required between court and either the Police Station or the employee's home,* as the case may be. Employees shall be guaranteed a minimum of three (3) hours for each separate court appearance, including any travel time. . . .

IV.  Overtime Premium Pay shall be calculated at the overtime rate required by the [FLSA].

(*Id.* (emphasis added).) CVPD policies and procedures required Plaintiff to submit Overtime Request forms to obtain compensation for overtime covered by Article 2.02 of the MOU. (*Id.* Ex. B, at 8 (CVPD overtime policy); *id.* Ex. D, at § 6.01.II.E.1 (CVPD policies and procedures governing court appearances); *see also id.* Ex. F (Plaintiff's Overtime Request forms).)

    Despite the express terms of the MOU and Defendant's policy and procedures manual, Plaintiff alleges that "more than one" of her field training officers told her that "when [she] had to work past the end of the shift, writing reports, or doing something else, but where the time was shy of one-half hour, that [she should] forget about putting in an overtime slip for that time." (Mory Decl. ¶ 6; *see also* Zappia Decl. Ex. A, at 63–64.) Plaintiff also alleges that her field training officers instructed her never to request more than thirty minutes of overtime compensation for travel time to court. (Mory Decl. ¶ 6.) And although CVPD's Policy and Procedure Manual authorizes overtime compensation for "*preparation,* travel time, and court appearance," (Turner Decl. Ex. D, at § 6.01.II.B.2), Plaintiff alleges that she "never put in for preparation time to appear in court" (Mory

1    Decl. ¶ 7).  Defendant contends that, even taking Plaintiff's allegations as true, Plaintiff cannot

2    establish that she worked any uncompensated overtime writing incident reports, or preparing for or

3    traveling to court.  (Mem. ISO MSJ 18; Reply 6.)

4         Defendant is correct.  A close reading of Plaintiff's declaration and testimony reveals not a

5    single allegation of a specific instance in which Plaintiff worked overtime and did not receive

6    compensation.  Rather, Plaintiff's declaration and testimony consist of broad allegations that she was

7    instructed not to request compensation for certain overtime; nowhere does Plaintiff claim to have

8    actually followed those instructions.  Accordingly, because Plaintiff has failed to proffer any evidence

9    that would justify a jury verdict in her favor, the Court **GRANTS** summary judgment on this aspect

10   of Plaintiff's claim.

11   **V.    Plaintiff Is Not Entitled to Compensation for Missed Lunch Breaks and "Pre-Shift**

12   **Work"**

13        Plaintiff contends that she is also entitled to compensation for missed lunch breaks and other

14   "pre-shift work."  (Opp'n 25.)  Plaintiff's argument on this point consists of a bald assertion in her

15   opposition that she was "not . . . paid for missed lunch breaks . . . nor the pre-shift work besides

16   donning and doffing [she] had to do . . . ."  (*Id.*)  Other than a single statement in Plaintiff's deposition

17   that the time she did not receive compensation for time spent preparing for certain scheduled training

18   sessions (*see* Barker Decl. Ex. 2 (Mory Dep. 2), at 104), the Plaintiff provides no admissible evidence

19   indicating that she was not properly compensated for lunch breaks and other pre-shift work.  Nor has

20   Plaintiff cited a single case, statute, or regulation indicating *how* the evidence she does cite provides

21   a basis for denying summary judgment on this aspect of her claim.[8]  (*See* Opp'n 25.)

22        Plaintiff's mere assertion that she was not properly compensated, without indicating how the

23   evidence cited is relevant to her claim, is not enough to create a genuine issue of material fact.  *See*

24   *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996) (holding that it is not the district court's task "to

25

26        [8] The Court notes that the FLSA does not mandate certain rest and meal periods—it simply
     provides when those periods must be compensated for.  *See California Dairies, Inc. v. RSUI Indem.*
27   *Co.*, 617 F. Supp. 2d 1023, 1033–34 (E.D. Cal. 2009) (citing *Payless Shoesource, Inc. v. Travelers*
     *Cos.*, 569 F. Supp. 2d (D. Kan. 2008)).  The evidence Plaintiff cites appears to only indicate that
28   plaintiff *missed* lunch breaks—not that she was *not compensated* for them.  (*See* Mory Dep. 2, at
     105–109.)

scour the record in search of a genuine issue of triable fact").  Nor is the evidence Plaintiff has cited

sufficient to enable a reasonable jury to find in her favor.  *Anderson*, 477 U.S. at 248.  Accordingly,

the Court **GRANTS** summary judgment on this aspect of Plaintiff's claim.

## CONCLUSION

For the reasons stated, the Court **DENIES** Defendant's motion as it pertains to Plaintiff's

entire FLSA claim.  However, the Court **GRANTS** partial summary judgment on the following

aspects of Plaintiff's FLSA claim:

     (1)    Plaintiff's claim that she is entitled to compensation for time spent donning and doffing her uniform;

     (2)    Plaintiff's claims that she is entitled to compensation for shooting practice, defensive tactics practice, and time spent studying;

     (3)    Plaintiff's claim that she is entitled to compensation for time spent writing incident reports and preparing for court; and

     (4)    Plaintiff's claim that she is entitled to compensation for missed lunch breaks and other pre-shift work.

Thus, genuine issues of fact remain only as to whether the following activities—all of which took

place during Plaintiff's time at the police academy—are compensable under the FLSA:

     (1)    uniform maintenance;

     (2)    firearm maintenance; and

     (3)    additional off duty physical fitness training.

IT IS SO ORDERED.

DATED:  September 24, 2010

Honorable Janis L. Sammartino
United States District Judge